**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:16-cv-00126-O-BP** |
| | § | |
| **LARRY CECIL CABELKA,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff United States' Motion for Summary Judgment (ECF No. 72) with Brief (ECF No. 73) and Appendix (ECF Nos. 74–76) in support, filed August 14, 2017; Defendant's Response to Plaintiff's Motion for Summary Judgment (ECF No. 188), filed November 22, 2017; and Plaintiff's Reply to Defendant's Response (ECF No. 193), filed December 6, 2017. On January 4, 2018, Defendant filed "Defendant Larry Cabelka's Motion to File a Surreply to Reply Filed by Plaintiff" (ECF No. 208) and Plaintiff filed a Response in opposition to Defendant's "Motion to File a Surreply" (ECF No. 213) on January 9, 2018. In reviewing the evidence for this Findings, Conclusions, and Recommendation, the undersigned considered the supplemental pleadings and evidence offered by the Defendant in opposition to the Plaintiff's Motion for Summary Judgment. ECF No. 215.

United States District Judge Reed O'Connor referred this case to the undersigned for pretrial management by Order entered on February 2, 2017. ECF No. 32. After considering the pleadings of the parties, the summary judgment evidence, and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Plaintiff United States' Motion for Summary Judgment (ECF No. 72).

## I.    BACKGROUND

Plaintiff United States of America brought this action against Defendant Larry Cecil Cabelka ("Defendant") on October 19, 2016, to reduce to judgment over $25.6 million in federal income tax liabilities. ECF No. 1 at 1, 3. On November 23, 2016, Defendant filed his Original Answer and Crossclaim (ECF No. 7), alleging that Rebecca Thorp, Jared Cabelka, Bonnie Cabelka, Amanda Slate, Price Farms, LLC, Kent P. Price, Logsdon Farms, Inc., Chad Logsdon, and Billy Logsdon should be parties to the action. Logsdon Farms, Inc., Chad Logsdon, and Billy Logsdon (ECF No. 11), Amanda Slate (ECF No. 24), and Rebecca Thorp (ECF No. 29) all filed motions to dismiss. Each of the movants sought dismissal of Defendant's "crossclaims" under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On February 24, 2017, the undersigned entered Findings, Conclusions, and Recommendation to dismiss Logsdon Farms, Inc., Chad Logsdon, Billy Logsdon, and Amanda Slate. ECF No. 33. Judge O'Connor accepted in full the FCR and dismissed Defendant's claims against the aforementioned parties. ECF No. 34.

The United States filed the instant Motion for Summary Judgment on August 14, 2017. ECF No. 72. By Court order, Defendant received an extension of time to file his response, and he filed his response on October 31, 2017. ECF No. 155. Defendant subsequently requested and was granted the opportunity to supplement his response, and filed supplemental documents on November 14, 2017 (ECF No. 173) and on November 22, 2017 (ECF Nos. 188–189). The United States then filed its reply to Defendant's pleadings on December 6, 2017. ECF No. 193.

On November 16, 2017, Price Farms, LLC and Kent P. Price filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 179. The undersigned entered a Findings, Conclusions, and Recommendation to dismiss on December 13, 2017 (ECF No. 202), and Judge O'Connor accepted in full the FCR and dismissed Defendant's claims against

Price Farms, LLC and Kent P. Price. ECF No. 206. On November 20, 2017, Jared and Bonnie Cabelka filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6). ECF No. 182. The undersigned entered the Findings, Conclusions, and Recommendation to dismiss both Jared and Bonnie Cabelka on December 21, 2017 (ECF No. 204), and Judge O'Connor accepted in full the FCR and dismissed Defendant's claims against both Jared Cabelka and Bonnie Cabelka. ECF No. 211. Rebecca Thorp filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) (ECF No. 190), which the undersigned construed as a motion for summary judgment. The undersigned recommended that Judge O'Connor grant summary judgment to Rebecca Thorp in a Findings, Conclusions, and Recommendation dated January 8, 2018. ECF No. 210.

## II.    LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there is no genuine issue of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B. *Pro Se* Standard

"*Pro se* plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, allowing all reasonable inferences that can be drawn from their pleadings." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 436 (S.D. Tex. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Nevertheless, *pro se* plaintiffs must "still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (citing *Grant v. Cellular*, 59 F.3d 523, 524 (5th Cir. 1995)). And "while courts liberally construe the pleadings of *pro se* litigants, courts are not obligated under Federal Rule of Civil Procedure 56 [ ] to search the record to find evidence supporting a party's opposition to a summary judgment motion." *Murray v. Int'l Bus. Machines Corp.*, No. 3:14-CV-1809-M BF, 2015 WL 4635776, at *1 (N.D. Tex. Aug. 4, 2015) (citations omitted).

## III.    ANALYSIS

### A. Issues Raised in Defendant's Response to Plaintiff's Motion for Summary Judgment.

It is an undisputed fact that Defendant has failed to file any federal income tax returns with the Internal Revenue Service ("IRS') since the tax year 1990. The United States alleges that Defendant is indebted to the United States in the amount of $26,400,532.02 as of June 30, 2017, for the tax years 1997–2003 and 2005 –2009. ECF No. 72.  Plaintiff argues that proper notices of the tax assessments and demands for payment were sent to Defendant, and that the Defendant "failed, neglected, or refused to voluntarily pay his income tax liabilities." *Id.* at 3. In his response, Defendant alleges that the statute of limitations ran on the tax assessments against him, that he never received proper notice of the tax assessments, and that the IRS Forms 4340 were improperly completed. ECF No. 155 at 1–2.

In response to the procedural issues raised in Defendant's response, Plaintiff argues that it properly sent Defendant a notice of deficiency as required under Section 6212(a), (b)(1) of the Internal Revenue Code ("IRC"). ECF No. 193 at 12. To evidence proper notice, Plaintiff provided a Declaration of IRS Revenue Office David Dodgen ("Dodgen") indicating that the statutory notice of deficiency or letter noticing Defendant of an examination audit deficiency were sent to Defendant to his last known address. ECF No. 74-4. The United States provides the following evidence to demonstrate proper notice was given to the Defendant regarding the tax assessments at issue in this case: (1) the deposition of Susan Yates ("Yates"), a former IRS agent who worked on Defendant's case, who testified the agency sent the notice of deficiency to three separate addresses (ECF No. 193-2 at 9); (2) a copy of the notice of deficiency dated June 22, 2005, sent to "Larry C. Cabelka, Post Office Box 295, Megargel, Texas 76370" (ECF No. 76-9); (3) a copy of the notice of deficiency dated June 22, 2005 sent to "Larry C. Cabelka, 232 Northeast 46th, Lawton, Oklahoma 73501" (ECF No. 76-1); and (4) a copy of the notice of deficiency dated June 22, 2005 sent to "Larry C. Cabelka, Post Office Box 10120, Lawton, OK 73507" (ECF No. 76-8).

In response, Defendant argues that he has "never signed for any of the audit notices or notices for assessment" and that the Plaintiff fails to provide evidence of proof of service. ECF No. 155 at 12. Defendant also challenges the deposition testimony of Yates, arguing that the testimony she made about contacting the Defendant at a number some time in 2005 was not registered to him until 2007. ECF No. 155 at 12. However, this conflicting statement does not establish that Defendant did not receive notice of the tax assessments against him. "Section 6212 does not require the IRS to prove that [the Defendant] received the notice, only that it was mailed to [his] last known addresses." *McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991)

(internal quotations and citations omitted). The government has submitted sufficient evidence to establish that it sent the Defendant the required notices under the IRC.

With regard to the Defendant's statute of limitations defense, the Court finds that the Plaintiff's lawsuit was timely filed pursuant to Section 6502(a)(1) of the IRC. *See United States v. Fernon*, 640 F.2d 609, 611-12, n.7 (5th Cir. 1981) (holding that the United States is subject to the ten-year statute of limitations found in § 6502(a)(1) of the IRC). The United States provides that the instant lawsuit was filed less than ten years after the oldest assessments were made in 2006. ECF No. 74-1. Further, Defendant does not identify specific evidence in the record to support his statute of limitations defense, as required to overcome a motion for summary judgment. *See Ragas*, 136 F.3d at 458.

Finally, Defendant argues that the Forms 4340 "do not have an appropriate signature on them. There is a signature of the Chief Accounting Officer at the bottom of them, with no date written date . . . the Government has not produced an individual 23C form showing the assessment date along with the signature assessment officer, but only the 4340 form where it mentions the 23C form." ECF No. 155 at 2. In response, Plaintiff asserts that "the United States is not legally required to produce these documents to Cabelka, since it has produced to Cabelka and the Court the IRS Forms 4340." ECF No. 193 at 17. The Forms 4340 "constitute[ ] valid evidence of a taxpayer's assessed liabilities and the IRS's notice thereof," *Perez v. United States*, 312 F.3d 191, 195 (5th Cir. 2002), and have "been held to be presumptive proof of a valid assessment where the taxpayer has produced no evidence to counter that presumption." *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992); ECF No. 74-3. Accordingly, the United States meets its burden on this issue, as the Forms 4340 produced to the Defendant met the requirements under the IRC.

**B. The United States Is Entitled to Summary Judgment Concerning the Claim that the Defendant Is Indebted for Income Tax Liabilities.**

The assessments against the Defendant pursuant to 26 U.S.C. § 6020(b) are based on the Defendant's failure to prepare and file his own income tax returns with the IRS. ECF No. 73 at 6. Title 26 U.S.C. § 7402(a) provides the court the authority to reduce the Defendant's tax assessments to judgment, stating, in pertinent part, that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."

In support of having the tax assessment against the Defendant reduced to judgment, the Government submitted the Declaration of IRS Revenue Officer, Fred Rice ("Rice"), who declared that the Defendant failed to pay any federal income tax returns with the IRS since tax year 1990; deposition testimony of former IRS Officers who worked on the Defendant's case; various copies of IRS documents evidencing Defendant's sources of income and Certificates of Assessment/Form 4340s; and deposition testimony of multiple witnesses confirming Defendant's tax liabilities. *See* ECF Nos. 74–79.

The United States argues and presents evidence that notice of and demands for payment of tax assessments were mailed to the Defendant on or about the dates of the assessments. ECF Nos. 76-1, 8, 9, and 74-3. In response, the Defendant argues that he is not entirely liable for the taxes assessed against him. Specifically, the Defendant argues that "the United States is not entitled to a summary judgment and this case should be dismissed because of required evidence proving this income was the Defendant's income and not that of his son, Jared Cabelka." ECF No. 155 at 16.

An assessment of federal tax made by the Commissioner of the Internal Revenue Service is entitled to "a presumption of correctness." *Welch v. Helvering*, 290 U.S. 111, 115. The United States will normally establish its assessment through introduction of Certificates of Assessment,

Payments, and Other Specified Matters (Certificates of Assessment or Form 4340s), and these Certificates of Assessment "constitute[ ] valid evidence of a taxpayer's assessed liabilities and the IRS's notice thereof." *Perez v. United States*, 312 F.3d 191, 195 (5th Cir. 2002). Defendant bears the burden of proving by a preponderance of the evidence that the assessments are wrong. *Id.;Portillo v. Comm'r*, 932 F.2d 1128, 1133 (5th Cir. 1991). To meet this burden, a taxpayer must prove that the method of computing the tax, and therefore the assessment, is arbitrary and without foundation. *Olster v. Comm'r*, 751 F.2d 1168, 1174 (11th Cir. 1985) (citing *Mersel v. United States*, 420 F.2d 517, 520 (5th Cir. 1969)).

However, the presumption of correctness does not apply where "the government's assessment falls within a narrow but important category of a 'naked assessment without any foundation whatsoever.'" *Portillo*, 932 F.2d at 1132 (quoting *United States v. Janis,* 428 U.S. 433, 442 (1976)). A "naked" assessment occurs when the records supporting the assessment are excluded from evidence or are nonexistent, "so that the basis upon which the assessment is calculated is beyond the knowledge of the Court." *U.S. v. Schroeder,* 900 F.2d 1144, 1149 (7th Cir.1990); *Coleman v. U.S.,* 704 F.2d 326, 329 (6th Cir.1983) (finding a naked assessment where the government conceded that it was without "any reports, work papers and other documents" to support its conclusions). Here, Defendant has not submitted competent summary judgment evidence to rebut the presumption that the United States properly assessed his tax liability for the applicable tax years nor does the Defendant provide a calculation of what he believes the proper tax assessment should be.

The United States submitted certified copies of Form 4340 Certificates of Assessments and Payments for tax years 1997–2003 and 2005–2009. ECF No. 74-3. These certificates identify all relevant assessments made by the IRS against Defendant and any credits made to such

assessments. A Certificate of Assessments and Payments is admissible for purposes of summary judgment and is presumptive proof of a valid assessment where the taxpayer has produced no evidence to counter that presumption. *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992) (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).

In its Motion, the Plaintiff provided a chart indicating the type of tax assessed against the Defendant, the applicable tax period, date of assessment, and the amount due as of October 17, 2016. ECF No. 73 at 2. The Plaintiff relies on a declaration of IRS Revenue Officer Rice, and attachments that include "IRS interest updates/transcripts" that show the calculation of the tax assessments against the Defendant for income taxes, penalties, and interest due to the United States by relevant tax year. ECF No. 74-1 at 1, 7–18. According to Plaintiff, based on Rice's declaration indicating the updated assessed balance owed, the total amount due as of June 30, 2017, is $26,400,532.02. ECF No. 193 at 21; 74-1 at 4.

In support of its contentions regarding the taxes assessed against the Defendant, Plaintiff provides copies of the official records titled "Form 4340, Certificate of Assessments, Payments and Other Specified Matters" for the tax periods ranging from 1997–2003 and 2005–2009. ECF No. 74-3. The official records provide the Defendant's adjusted gross income, taxable income, self-employment tax, penalties, interest, additional taxes assessed by examination, dates of statutory notices that were sent to the Defendant, liens, and any payments made by Defendant. *Id.* The official records also provide the assessed balance owed by the Defendant. In response, Defendant argues that some of the tax assessments against him were improperly made. Specifically, the Defendant argues the following matters cause a genuine issue of material fact, and thus summary judgment should be denied:

1. The income from Jared Cabelka's harvesting customers was counted as income several times;

2. The earnings gained from gambling was improperly assessed;

3. The insurance proceedings he received from the Rural Community Insurance were given to Jared Cabelka;

4. Plaintiff cannot prove that the bank accounts from Herring National Bank, First National Bank of Fletcher, United Community Bank of North Dakota, Vectra Bank of Center, Colorado, First Bank of Burkburnett, Crowell State Bank, and Herring National Bank of Vernon attached to Defendant's name actually belonged to the Defendant;

5. Defendant only controlled part of Golden Triangle, LLC;

6. Jared Cabelka controlled Triangle Harvesting—Defendant cites his own affidavit as support;

7. Jared Cabelka received income from Logsdon Farms, Inc., not Defendant—Defendant cites Chad Logsdon's affidavit and his own affidavit as support (ECF No. 155-1 at 13–14);

8. Jared Cabelka was responsible for the Deere and Company property and some of the assets on the IRS list of assets belonging to Defendant are legally owned by Jared Cabelka with Thorp as trustee—Defendant cites a petition filed by "Rebecca Cabelka, as Trustee of the Jared T. Cabelka and Jordan L. Cableka Trust, and Jared T. Cabelka" in the District Court of Comanche County, Oklahoma (ECF Nos. 75-10; 155-1 at 11);

9. Price Farms, LLC was the sole employer of Jared Cabelka's custom harvesting operations since the late 1990's, and Jared Cabelka used Defendant's social security number for his 1099—Defendant cites his own affidavit as support;

11

10. Defendant's child support proceedings indicate Defendant only made $60,000 in 2001—Defendant cites the divorce decree for Defendant and Thorp dated October 31, 2001 (ECF No. 75-1);

11. The income from all sources including Jared Cabelka's "custom harvesting business and government payments made to both Jared Cabelka and the Defendant were placed on both individuals audit amounts. Then some individually specific ones were just placed on the Defendant's audit to include gross gambling winnings"; and

12. Defendant believed Thorp filed and paid their taxes back in the 1980s and 1990s— Defendant cites his own affidavit as support.

While the Defendant mentions other factual issues in his response, the Court finds that those issues are not pertinent to the issues in this case. *See Anderson*, 477 U.S. at 248 (finding that disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion).

As to issues nos. 1, 2, 3, 5, and 11, Defendant offers no evidence in support of these assertions, and thus fails to meet his burden to overcome summary judgment on these issues.

Further, as to issues nos. 6 and 12, Defendant solely cites his own affidavit in support and Defendant attempts to create fact issues by relying on his self-serving affidavit. However, self-serving affidavits are not sufficient to overcome a motion for summary judgment. *See BMG Music v. Martinez,* 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *see also United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for plaintiff where defendant's only evidence consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary

judgment" (internal quotation marks and citation omitted)). A taxpayer may not overcome the certified assessments' presumption of correctness by relying on self-serving statements. *See United States v. Chambers*, No. 3:09–cv–961–J–34JRK, 2014 WL 2136041, at *10 (M.D. Fla. May 22, 2014) (citing *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985)).

With regard to issue no. 8, the United States cites financial statements given to Deere and Company and Crowell State Bank "showing millions of dollars of assets which had to be owned by [Defendant], because Jared was too young to own such assets on the dates of the financial statements." ECF No. 72. In response, Defendant argues that the "shop East of Lawton" that the United States listed as a "Business Personal Property Asset" under Defendant's name "was deemed to be legally owned by Jared and Jordan Cabelka with Rebecca Thorp as trustee over it." ECF Nos. 155 at 9–10 and 74-4 at 183. However, the "Business Personal Property Assets" prepared by the IRS is not material in calculating a party's federal income tax. *See Boneparte, James Jr.,* T.C. Memo. 2017-193, 2017 WL 4408032, 114 T.C.M. (CCH) 381, T.C.M. (RIA) 2017-193. ("The amount of federal income tax depends on taxable income. Calculating taxable income requires calculations of both gross income and adjusted gross income. Gross income is defined as all income from whatever source derived.").

Nothing in the United States' pleadings suggests that it incorporated any of the assets or property that Defendant argues does not belong to him in its tax assessments. As the United States argues—and as supported by the Certificate of Assessments, Payments and Other Specific Matters and other official IRS records—the taxable income calculated by the IRS includes the money deposited into bank accounts on which the Defendant was a signatory, income reported on 1099 Forms showing amounts paid to Jared Cabelka and Defendant, crop insurance paid by the Rural Community Insurance Agency, Inc., and money the Defendant gained from gambling. *See* ECF

No. 74-4. Thus, the issue of who owned specific property is not material to the United States' claims against Defendant.

Addressing issue no. 10, Defendant also argues that Thorp had acted as trustee over Jared Cabelka's assets since 2004, and that his child support shows that Defendant "paid her $600 dollars a month." ECF No. 155 at 8. The divorce decree for Defendant and Thorp dated October 31, 2001, shows that Defendant's adjusted monthly gross income was $6,000. ECF No. 75-1 at 8. The divorce decree evidences that Defendant made at least $6,000 in adjusted monthly gross income, but still did not file any tax returns. *Id.* Defendant has pointed to no record evidence which would indicate that the tax assessments against him are not an accurate representation of the amount of his tax liabilities for the subject years. *See Stearman v. Comm'r,* 436 F.3d 533, 537 (5th Cir. 2006), *cert. denied,* 547 U.S. 1207 (2006) ("[S]hopworn arguments characteristic of tax-protester rhetoric that has been universally rejected by this and other courts.").

In contesting the Motion for Summary Judgment, the Defendant heavily relies on his own affidavit and alleges that "to the best of [his] knowledge that someone has tampered with the documents in this case to mislead the court." ECF No. 188 at 2. Defendant appears to make this conclusory allegation due to the testimony of Yates, the former IRS Officer who worked on the Defendant's case, because she had stated that she attempted to contact the Defendant at a specific phone number that he alleges "was not in service." *Id.* However, the Defendant does not deny that he failed to file income tax returns from 1997–2003 and 2005–2009. Instead, the Defendant argues that the tax assessments against him were improperly made. The Defendant's arguments do not rebut the tax assessments' presumption of correctness. *Long v. Comm'r.,* 757 F.2d 957, 959 (8th Cir. 1985) (per curiam) ("[I]n deficiency actions the Commissioner's determination is presumed correct, and the petitioner bears the burden to prove otherwise. . . .") (internal citations omitted).

With respect to issue no. 4, Defendant offered letters from Crowell State Bank, Herring Bank, First National Bank of Fletcher, and United Community Bank as evidence that he never had accounts with these banks. ECF No. 155-2 at 1–9. In response to this evidence, Plaintiff offered deposition testimony of the individuals who signed the letters filed by Defendant. Specifically, Plaintiff states that the banks simply do not have records of the Defendant's account information because of the bank's retention policies. Thus, according to Plaintiff, the lack of records under Defendant's name does not overcome its motion for summary judgment. The undersigned agrees. Although Defendant claims that he was not an interest holder in any of the bank accounts that were part of the tax assessments against him, Plaintiff has provided official IRS records; deposition testimony from IRS agents; witnesses; third-party defendants; and case law that confirm Defendant's interest in the bank accounts at issue in the present case. ECF Nos. 74-4 at 28; 193-16; 193-17; and 193-18.

Specifically, the United States provides a copy of its official records of the notice of deficiencies sent to the Defendant, which included an "Explanation of Adjustments" that shows deposits made at Herring National Bank, First National Bank of Fletcher, United Community Bank of North Dakota, Vectra Bank of Center, Colorado, First Bank of Burkburnett, Crowell State Bank, and Herring National Bank of Vernon from 1997–2002. The deposits in each bank account ranged from $2,103,304.81 to $4,515,545.73. ECF No. 74-4 at 28, 55. "[A]ll money deposited in a taxpayer's bank account during a given period constitutes taxable income." *DiLeo v. Commissioner,* 96 T.C. 858, 867 (1991), *aff'd.* 959 F.2d 16 (2d Cir. 1992). Bank deposits are prima facie evidence of income. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). In the analysis of bank deposits cases, deposits are considered income when there is no evidence that they represent

anything other than income. *Price v. United States*, 335 F.2d 671, 677 (5th Cir. 1964); *United States v. Doyle*, 234 F.2d 788, 793 (7th Cir. 1956).

In support of its Motion, Plaintiff relies on IRS agent Dodgen's declaration. The declaration provides an IRS Form 886 Explanation of Items in the audit of Defendant for tax years 1997–2003, confirming that Defendant had not filed a tax return since 1990, that he sold farm equipment, that he was involved in custom harvesting, that he leased farm equipment, that Jared Cabelka provided bank statements and deposit slips for several different bank accounts for 1997–2002, that both Defendant and Jared Cabelka had signatory authority over most of these accounts, that the agent prepared a spreadsheet for 1997–2002 listing the total deposits and cash withheld by bank account, that the agent determined whether there were any loans, redeposits, etc. to reduce the total deposited, and that the income totaled for each year from 1997–2002 was between $1.5 million (2002) and $3.3 million (2000), and $553,630 for tax year 2003. ECF No. 74-4 at 186.

Defendant argues to controvert Plaintiff's records and deposition testimony concerning the bank accounts by relying on various letters from some of the banks stating they did not have records of Defendant's accounts. But as Plaintiff argues, these letters do not provide the type of affirmative evidence that is necessary for Defendant to raise a genuine issue of material fact. *See Anderson*, 477 U.S. at 248. A general denial filed by the Defendant is not sufficient to create genuine issues for trial, when a motion for summary judgment, properly supported by probative evidence, has been filed. Therefore, Defendant fails to meet his burden to overcome summary judgment on this matter.

As to Defendant's supplemental response concerning the Herring National Bank accounts—which were a part of the tax assessments against the Defendant—the undersigned finds that the Defendant does not meet his burden to overcome the motion for summary judgment. As

the United States argues, "[t]axpayers are required to maintain records that are sufficient to allow the IRS to determine their correct tax liability. 26 U.S.C. § 6001. Larry Cabelka did not produce any records to allow the Government to determine his correct tax liability, so the IRS prepared substitute income tax returns for him, under 26 U.S.C. § 6020(b)." ECF No. 193 at 20.

Taxpayers are required to retain sufficient books and records from which their actual income can be determined. 26 U.S.C. § 6001. If a taxpayer's records are incomplete or inaccurate, the IRS is authorized to reconstruct his income in accordance with any reasonable method that accurately reflects actual income. 26 U.S.C. § 446; *Jones v. Comm'r of Revenue*, 903 F.2d 1301, 1303 (10th Cir.1990); *Palmer v. United States*, 116 F.3d 1309, 1312 (9th Cir. 1997); *see also Dodge v. Comm'r of Revenue*, 981 F.2d 350, 353 (8th Cir. 1992) (holding that the IRS acted reasonably in reconstructing taxpayer's income from bank deposits). The Defendant argues that he did not own the bank accounts with Herring National Bank because Jared Cabelka "sued Herring Bank for closing his bank account and stopping payment on checks . . . Defendant did sign checks on the account for Jared's benefit only[.]" ECF No. 208 at 1–2.

In response to Defendant's supplemental motion, the United States argues that the supplemental motion and attached evidence should not be considered by the Court because "Cabelka offers no new arguments or evidence that could not have been submitted with his Response," "the arguments and evidence submitted with the motion/surreply do not address a material question of law or fact," and "the arguments about notice of assessments were raised in the Response, and Cabelka merely wants the last word on that issue." ECF No. 213. The United States' response reiterates its argument that the anticipatory assignment of income doctrine applies in this case due to the Defendant's signatory authority on the Herring National Bank accounts, and

that the Defendant erroneously focuses on ownership of the accounts rather than the earned income on those accounts. ECF No. 213 at 7.

Defendant essentially argues that the tax assessments for years 1997–2002 against him are incorrect because the United States made the assessments in part based on the bank accounts with Herring National Bank. ECF No. 208. The IRS, however, is authorized to estimate individuals' tax liability as long as the method used is reasonable. *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243 (2002). "Deposits in a taxpayer's bank account are *prima facie* evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source." *Welch v. C.I.R.*, 204 F.3d 1228, 1230 (9th Cir. 2000); *see also Reynoso v. Comm'r of Internal Revenue*, 112 T.C.M. (CCH) 400 (T.C. 2016) ("The Commissioner often uses bank-deposits analyses to reconstruct taxpayers' income—and we have long approved their use."); *Johnston v. Comm'r*, 80 T.C.M. (CCH) 477, 2000 WL 1478477, at *9 (2000) (T.C. Memo 2000–315) ("the Commissioner may satisfy the predicate evidence requirement in unreported income cases by introducing evidence linking the taxpayer to tax-generating acts").

The presumption of correctness afforded to the United States when determining a party's taxable income must be rebutted by sufficient evidence. *See U.S. v. Didio*, Civ. A. No. 72-1428, 1976 WL 977, at *3 (E.D. Pa. Feb. 19, 1976) (finding that a defendant who argued that the tax assessments made against him were in error because the bank deposits at issue did not belong to him had failed to meet his burden to overcome summary judgment because he offered no evidence to show error on part of the IRS). In the instant case, the United States prepared substitute income tax returns for the Defendant, under 26 U.S.C. § 6020(b), due to his failure to file any tax returns for the tax years at issue in this case. ECF No. 193 at 20. This deferential standard allowing the United States to calculate and substitute income tax returns is reasonable when a taxpayer fails to

keep inadequate records, or where, as here, the records are not supplied or available. *See Cummings v. Commissioner of Internal Revenue* [69-1 USTC P 9370], 410 F. 2d 675 (5th Cir. 1969); *United States v. Kamieniecki* [67-1 USTC P 9133], 261 F. Supp. 683 (D. N. H. 1966).

The Defendant has not shown that the method of computing the tax was arbitrary and without foundation. *Olster v. Comm'r,* 751 F.2d 1168, 1174 (11th Cir.1985) (citing *Mersel v. United States,* 420 F.2d 517, 520 (5th Cir.1969)). He has not offered the type of affirmative summary judgment evidence that could create a genuine dispute of material fact for the tax assessments against him for the tax years 1997–2002 and 2005–2009. Therefore the undersigned recommends that, pursuant to 26 U.S.C. § 7402, the United States be entitled to have the tax assessments from 1997–2002 and 2005–2009 reduced to judgment against the Defendant for the unpaid balance.

As to issues nos. 7 and 9, Defendant argues that he never received income from Chad Logsdon, Billy Logston, and Logston Farms, Inc. ("Logston defendants") or Kent Price and Price Farms, LLC ("Price Farms defendants"). In support of his position, Defendant provides the affidavit of Chad Logsdon, which states that Logsdon Farms, Inc. never issued a Form 1099 to Larry Cabelka for the years 1997 to 2003. ECF No. 155-1 at 14. In response, Plaintiff relies on Jared Cabelka's deposition testimony as evidence that Defendant received income from the Logsdons for custom harvesting, and further relies on an allegedly contradictory statement made by Defendant in his own deposition, in which he says Chad and Billy Logsdon were his customers. ECF No. 193 at 23–24. The United States provided the IRS records titled "Explanation of Adjustments," which details the tax assessment against the Defendant for 2003. ECF No. 74-4 at 69. The Explanation of Adjustments provides income from "Forms 1099 issued under Jared's SSN

Billy M. and Kathryn Logsdon dba Logsdons Farms" for $94,140.00, "Chad Logsdon dba Chad Logsdon Farms" for $93,703.00, and "Price Farms, LLC" for $37,928.00. *Id.*

The United States argues that the deposition testimony of Rebecca Thorp, Jared Cabelka, Bonnie Cabelka, Amanda Slate, Mary Coffey, and Fred Rice, all prove that Larry Cabelka hid assets under the names of other parties. According to Jared Cabelka, he and his father received income from the Price Farm defendants in 2003 for custom harvesting, and they shared the income from this business operation. ECF No. 75-12 at 23. In response, Defendant argues that "Price Farms issued 1099's to the IRS for Jared Cabelka for the years 1997 through 2002, correctly, and then did not catch that apparently Jared Cabelka asked them to use a different social security number for the 2003 tax year, which was the Defendant's social security number." ECF No. 155 at 7.

The Form 1099-Misc. provided by the United States shows that the $37,928.00 income paid by the Price Farms defendants to Defendant only notes "Larry Cabelke" [sic] as an "alternative payee." ECF No. 74-4 at 119; ECF No. 74-4 at 69. Further, the Form 1099-Misc. provides a "Payee Entity Data: SSN" with redacted versions of an individual's social security number. *See* ECF No. 74-4. Based on the Court's review of the various IRS records, it appears that the Defendant's social security number was the one reported to the IRS by Price Farms. ECF Nos. 74-4 at 69, 92, and 119.

Plaintiff also provides an alternative argument that any income Defendant received through Jared Cabelka would be taxable under the anticipatory assignment of income doctrine. ECF No. 193 at 24. The anticipatory assignment doctrine is meant to prevent taxpayers from avoiding taxation through "arrangements and contracts however skillfully devised to prevent [income] when paid from vesting even for a second in the man who earned it." *Comm'r v. Banks,* 543 U.S. 426,

437 (2005) (citations omitted) ("[N]o distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."). A taxpayer cannot exclude an economic gain from gross income by assigning the gain in advance to another party. *Id.*

Unless a taxpayer shows that the IRS computed an assessment arbitrarily and without foundation, the calculation of a tax deficiency is presumptively correct. *Welch*, 290 U.S. at 115; *United States v. Chila,* 871 F.2d 1015, 1018 (11th Cir. 1989); *United States v. Dixon,* 672 F.Supp. 503, 506 (M.D. Ala.1987), *aff'd* 849 F.2d 1478 (11th Cir. 1988). The burden is on the Defendant to show that the assessments are arbitrary or incorrect. *Bar L Ranch v. Phinney,* 426 F.2d 995, 998 (5th Cir. 1970). The United States has submitted certificates of assessment and payments (Form 4340s) with this Motion. This satisfies the government's *prima facie* case of tax liability against the Defendant. *Hefti v. I.R.S.*, 8 F.3d 1169, 1172 (7th Cir. 1993). The certificates of assessment and payments raise a presumption of validity and accuracy. *Id.* In his pleadings, the Defendant refers to several documents alleging that Jared Cabelka received income from the Price Farms and Logston defendants, but the evidence relied upon by Defendant fails to show he is not liable for the 2003 tax assessment. The Defendant has not produced competent summary judgment evidence to overcome the presumption of correctness afforded to the United States, and he cannot now simply deny owing the amounts assessed by the United States. The Defendant's general denial is insufficient to rebut the presumption of validity and accuracy.

In sum, the United States' assessments that the Defendant is indebted to the United States in the amount of $26,400,532.02 for the tax years 1997–2003 and 2005–2009 are presumptively valid, and the Defendant has failed to provide sufficient evidence to persuade the Court the United States' determinations are incorrect. Absent any competent evidence for the Court to consider in

rebuttal to the United States' presumptively valid tax assessments and the sworn affidavits, the undersigned finds that no genuine issue of fact exists. The United States has established that the tax liabilities were properly assessed against the Defendant and summary judgment is appropriate in this case. Thus, the undersigned recommends that the tax debt be reduced to judgment.

### C. The Third Party Defendants Are Not Liable to Defendant for the Tax Assessments Made Against Him.

It is well-settled that the responsibility for timely filing tax returns is the taxpayer's alone. *Millette & Assocs., Inc. v. C. I. R.*, 594 F.2d 121, 124 (5th Cir. 1979) (per curiam), *cert. denied*, 444 U.S. 899 (1979); *see also United States v. Boyle*, 469 U.S. 241, 247 (1985). Defendant's individual liability for his failure to file income tax returns is a personal and nondelegable duty that is Defendant's alone. *Millette & Assocs.*, 594 F.2d at 124; *see also* 26 U.S.C. § 6012. As indicated in Section I, Defendant filed cross-claims against multiple individuals and a company.

The undersigned's Findings, Conclusions, and Recommendations to dismiss Amanda Slate, Price Farms, LLC, Kent P. Price, Logsdon Farms, Inc., Chad Logsdon, Billy Logsdon, Jared Cabelka, and Bonnie Cabelka have all been adopted and accepted by Judge O'Connor based on the Defendant's individual liability for his failure to file income tax returns. ECF Nos. 43, 206, and 211. The undersigned's Findings, Conclusions, and Recommendation to dismiss Rebecca Thorp is still pending before Judge O'Connor. Accordingly, Judge O'Connor should dismiss as moot the United States' Motion for Summary Judgment as it relates to any party other than Defendant.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the United States' Motion for Summary Judgment (ECF No. 72) as to Defendant and deny as moot as to all other parties. The Defendant is indebted to the United States for his unpaid

income taxes, penalties, statutory additions, and interest for the tax years 1997–2003 and 2005–2009 in the amount of $26,400,532.02, plus penalties, statutory additions, and interest thereon after June 30, 2017, until paid at the rates set forth in 26 U.S.C. § 6601, 6621, and 28 U.S.C. § 1961(c). Defendant's liabilities are set forth below:

| Type of Tax | Tax Period | Amount Due Through June 30, 2017 |
| --- | --- | --- |
| 1040 | 1997 | $5,935,791.16 |
| 1040 | 1998 | $5,348,471.90 |
| 1040 | 1999 | $4,102,916.24 |
| 1040 | 2000 | $4,943,093.56 |
| 1040 | 2001 | $3,142,622.16 |
| 1040 | 2002 | $2,065,079.49 |
| 1040 | 2003 | $526,942.15 |
| 1040 | 2005 | $98,482.67 |
| 1040 | 2006 | $97,360.52 |
| 1040 | 2007 | $54,510.22 |
| 1040 | 2008 | $243.78 |
| 1040 | 2009 | $85,018.17 |
| **TOTAL** | | **$26,400,532.02** |

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions,

and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed January 10, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

24