**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:16-cv-00126-O-BP** |
| | § | |
| **LARRY CECIL CABELKA,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:18-cv-00174-O-BP** |
| | § | |
| **LARRY CECIL CABELKA,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the following pleadings filed in the referenced cases: the United

States' Motion to Appoint Receiver and Supporting Briefs filed on October 29, 2020 (ECF Nos.

305 in 7:16-cv-00126-O-BP (the "Cabelka Case") and 57 in 7:18-cv-00174-O-BP (the "Megargel

Property Case")); Motion to Stay filed by Defendant Larry Cabelka ("Cabelka") on November 20,

2020 (ECF Nos. 311 and 64); Response to the United States' Motion filed by Defendant Jacqueline

Latimer ("Latimer") (ECF Nos. 312 and 65); the United States' Objections to Cabelka's Motion

for Stay and Reply to Latimer's Response filed on December 3, 2020 (ECF Nos. 314 and 315; 67

and 68); and Cabelka's Supplemental Documents filed on December 7, 2020 (ECF Nos. 316 and

60). After providing notice to the parties, the Court held a telephonic hearing on the pending motions in these cases on December 16, 2020.

After reviewing the motions, responses, replies, the documents offered in support of the pleadings, and the arguments of counsel for the United States and of Cabelka and Latimer at the hearing, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT IN PART** the United States' Motions to Appoint Receiver and **DENY** the Defendant's Motions to Stay.

The facts of these cases are set forth at length in previous orders. In the Cabelka Case, these include the Findings, Conclusions, and Recommendation (ECF No. 216), the Court's Order Accepting Findings, Conclusions, and Recommendation (ECF No. 220), and the opinion of the United States Court of Appeals for the Fifth Circuit affirming the Court's Amended Final Judgment in that case. *See United States v. Cabelka*, 766 F. App'x 57 (5th Cir. 2019). The Findings, Conclusions, and Recommendation (ECF No. 52) in the Megargel Property Case further explain the facts as they relate to the property that the United States wishes to sell in Megargel, Texas.

The facts and applicable legal authorities support a conclusion that the United States is entitled to appointment of a receiver in these cases to assist it in collecting on the judgments the Court entered previously. *See* Fed. R. Civ. P. 69(a); Tex. Civ. Prac. & Rems. Code § 31.002(b)(3). Under 26 U.S.C. § 7402(a), the Court may issue "orders appointing Receivers, and such other orders and processes . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." Upon request by the United States, the Court may appoint a receiver. *Id.* § 7402(a).

The United States requests that the Court appoint Robert Ogle, a certified public accountant who previously has served as a court-appointed receiver, to act as the receiver in these cases. The evidence offered in support of his appointment appears to be in order, and the undersigned

recommends that Judge O'Connor appoint Mr. Ogle to serve as the receiver under the terms of the proposed order attached to the United States' Motion to Appoint Receiver, as modified by these findings, conclusions, and recommendation. (ECF Nos. 305-11 in the Cabelka Case and 57-11 in the Megargel Property Case). A copy of the order which the undersigned recommends that Judge O'Connor enter is attached to these findings, conclusions, and recommendation.

Cabelka and Latimer have agreed to the appointment of a receiver to sell the Megargel property, but they object to the receiver selling any other property. ECF Nos. 311 and 312, 64 and 65. While the United States' Motion to Appoint Receiver references other properties that Cabelka and his businesses potentially own, the receiver will be required to obtain approval of the Court before selling any other properties or assets owned by Cabelka. ECF Nos. 305 at 4 and 57 at 4. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the United States' Motions to Appoint Receiver (ECF Nos. 305 and 57).

Although the Court is sympathetic to Cabelka's current physical condition and medical issues evidenced by his doctor's affidavit in the Supplemental Documents (ECF Nos. 316 and 60), Cabelka has not shown good cause why he cannot respond to the United States' Motions to Appoint Receiver or retain counsel to respond on his behalf. As the United States points out, Cabelka partially responded to the United States' Motions to Appoint Receiver in his Motions to Stay. Because Cabelka has not adequately explained why he cannot respond to the United States' Motions to Appoint Receiver, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** his Motions to Stay (ECF Nos. 311 and 64).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served

3

with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      **SIGNED** on January 19, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 7:16-cv-00126-O-BP |
| | § | |
| **LARRY CECIL CABELKA,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 7:18-cv-00174-O-BP |
| | § | |
| **LARRY CECIL CABELKA,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER APPOINTING RECEIVER</u>

As provided in the Orders Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge (ECF No. ____ in Civil Action No. 7:16-cv-00126-O-BP and No. ____ in Civil Action No. 7:18-cv-00174-O-BP), the Court **ORDERS** as follows:

1. Pursuant to Internal Revenue Code [26 U.S.C.] §§ 7402(a) and 7403(d); 28 U.S.C. §§ 754 and 959(b), and Federal Rule of Civil Procedure 66, the Court hereby **APPOINTS** Robert E. Ogle of Houston, Texas, to be the federal equity receiver (in such capacity, the "Receiver") of all property and businesses of Larry Cecil Cabelka ("Cabelka"), including, but not limited to, Golden Triangle Farms LLC (as an entity or a sole proprietorship), and any other entity or proprietorship owned and/or controlled, directly or indirectly, by Cabelka, and entities with similar names and their successors, as well as any asset in which Cabelka has an interest, regardless of

record title (collectively, "Entities" or the "Receivership Estate") except as otherwise provided in this Order.

2.      The Receiver shall be, and is hereby, vested with complete jurisdiction and control over all of the Entities' (a) real property, including, but not limited to, 9636 FM 210, Megargel, Texas 76370, also known as 10255 FM 210, Megargel, Texas 76370 ("the Megargel Property"), such property being further described by metes and bounds in the Cash Deed from Kelly E. Schmaltz and wife, Toni L. Schmaltz, to G.D. Larson dated March 27, 2001, recorded in Volume 0607, Page 946, Document Number 101827, of the Official Public Records of Archer County, Texas, a true and correct copy of which is attached to this Order as Government Exhibit 7; (b) equitable property; (c) tangible and intangible personal property, interests, or assets of any nature, wherever located, including, but not limited to, the bank accounts and vehicles; and (d) claims, demands or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise (collectively, the "Entities Assets").

3.      Pursuant to 28 U.S.C. § 754, the Receiver shall, to the extent practicable, within thirty (30) days following entry of this Order, file copies of the United States' Complaint in Case No. 7:16-cv-00126-O-BP, this Court's Amended Judgment in that case, and this Order, with the Clerk of the District Court for every federal judicial district in which the Receiver has reason to believe the Entities' Assets may be found (the "Receivership Filings"). Notwithstanding the thirty-day time limitation set forth in 28 U.S.C. § 754, the Receiver may apply to the Court for an extension of time within which to complete the Receivership Filings.

4.      The Court hereby vests the Receiver with authority and jurisdiction over the Receivership Estate and the Entities' Assets to the maximum extent permitted by 26 U.S.C. § 7403(d) and 28 U.S.C. §§ 754, 959(b) and 1692, and Federal Rule of Civil Procedure 66 and hereby empowers and permits the Receiver to take any and all actions necessary and proper to carry out the express provisions of this Order.

5.      Without limiting the generality of the foregoing expressions of the Receiver's authority over the Receivership Estate and the Entities' Assets, the Receiver is specifically authorized, empowered, and directed to perform the following duties and responsibilities, at all times with a view towards (a) locating, preserving, and protecting the Entities' Assets; and (b) distributing the Entities' Assets that the Receiver collects as expeditiously as possible to creditors (including the United States of America) of the Entities, pursuant to further order of this Court:

a.      *Management of Assets:* Manage and administer the Entities' Assets as is necessary or required to comply with and effectuate the directives of this Order;

b.      *Identification and Evaluation of Claims that may be Asserted by the Entities and Identification of Possible Creditors of the Entities:* Investigate past operations and transactions of the Entities so as to (1) determine what claims, if any, may be asserted on behalf of the Entities; and (2) obtain all necessary records that relate to any entity that ever loaned money, extended credit to, or invested or had interests in the Entities or the Entities' Assets; (3) notify any entity that may have an interest in the Entities or the Entities' Assets of the current proceedings, providing those entities the opportunity to submit material establishing the nature and amount of their investment; present to the United States within 120 days of the date of this Order, or on such other date as the United States and the Receiver may agree, a confidential report detailing the nature of any claims that may be asserted on behalf of the Entities, all persons that may have an interest in the Entities' Assets, and all persons who have directly or indirectly received or are in possession of any Entities' Assets;

c.      *Secure, Manage, and Discontinue Ongoing Business Operations:* Secure the business premises, business equipment, data, and documents of the Entities; take control of all means of communication with clients, investors, vendors, customers, landlords, agents, and others doing business with the

Entities; take all reasonable and necessary actions to wind-down and liquidate the business operations of the Entities;

d.   *Institute, Defend, Compromise, or Settle Legal Actions:* After consulting with the United States, evaluate, institute, assert, prosecute, defend and compromise and settle claims and causes of action on behalf of the Receivership Estate, as well as claims and causes of action for fraudulent conveyance on behalf of the Receivership;

e.   *Corporate Governance:* Pursuant to 28 U.S.C. § 959(b), succeed to be the sole and exclusive managing member and representative of each of the Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Entities.

f.   *Issuing Payments, Authorizing Expenses, Entering into Agreements, and Retaining Professional Services:* The Receiver, on behalf of the Entities, may:

   i.   Incur obligations and/or authorize such expenses as the Receiver deems reasonable and necessary in discharging the Receiver's duties;

   ii.   Enter into contracts and/or modify existing contracts as the Receiver deems reasonable and necessary in discharging the Receiver's duties, including financing contracts secured by the Entities' Assets; and

   iii.   Retain persons to render professional services, including attorneys, accountants, financial advisors, bookkeepers, securities professionals, and others as the Receiver deems reasonable and necessary in discharging the Receiver's duties (the "Professionals");

*provided, however,* if the Receiver knows or reasonably believes the expenses incurred or will be incurred (exclusive of the Fee referenced in Paragraph 7 below) as a result of an action taken pursuant to this subsection will exceed $25,000 (Twenty Five Thousand Dollars and No Cents) ("Large Expenses"), the Receiver shall, prior to incurring the Large Expense or entering into any such contract or retention agreement that will or may result in a Large Expense, obtain consent therefor from the United States. To the extent that: (1) the cumulative expenses exceed $50,000 for which the Receiver has not obtained consent; or (2) the Receiver determines that an expense that the Receiver previously believed to be less than $25,000 will in fact exceed $25,000, the Receiver will immediately notify and obtain the consent of the United States. In the event that circumstances occurred such that the Receiver incurred a Large Expense prior to receiving the United States' consent therefor, the United States may provide the consent required

4

by this subsection on a retroactive basis without prejudice to either the United States or the Receiver. Any disputes arising between the United States and the Receiver regarding Large Expenses shall be subject to the dispute resolution procedure described in paragraph 8 of this Order as if the disputed Large Expense was an Expense Summary (as defined herein).

g.    Access to Corporate Documents and Computers: Access to all documents, books, and records of the Entities as necessary to fulfill the receiver's duties as set forth herein;

h.    Liquidation Plan: develop a plan for liquidation and distribution in conjunction with an in consultation with The United States or its successor (the "Receiver's Plan") which shall: (i) be submitted to this Court for approval, (ii) propose procedures for liquidation of the Entities or their assets and liquidation of Cabelka's assets, (iii) propose procedures for filing and payment of claims that are superior to those of the United States and payment of the United States' claims, and (iv) only in the event that it appears excess funds will be available, propose procedures for filing and payment of claims that are inferior or subordinate to those of the United States;

i.    Distribution Fund: Open a custodial account (the "Distribution Fund") at a federally insured bank to receive and hold all cash assets that the Receiver collects and receives;

j.    Investment of Distribution Fund: Upon consulting with and obtaining consent from The United States or its successor, invest and reinvest the Distribution Fund with a view toward (i) conserving and preserving the principal; and (ii) maximizing the investment return; and

k.    Taxes: Pay all local, state, and federal taxes as required by the applicable tax authority and in accordance with the applicable tax regulations.

6.    The Receiver shall be entitled to payment for all reasonable costs, fees, and other expenses incurred in the performance of his duties as set forth in this Order and approved by this Court .

7.    The Receiver shall be paid a reasonable fee (the "Fee") for his services, which shall be calculated by multiplying his standard rate of $300[1] per hour by the actual number of hours spent performing services. The Receiver shall bill his time in quarter hour increments. In addition,

---

[1] Which shall also be the hourly rate charged the Receivership Estate by the Receiver's attorney.

the Receiver shall be reimbursed for all reasonable costs and expenses paid and incurred by the Receiver in the performance of his duties ("Expenses"). The sole source of payment for the Receiver's Fees and Expenses shall be out of cash recoveries from assets collected, seized and to the extent necessary liquidated or sold. The Receiver shall be entitled to payment of his Fees and Expenses on a monthly basis provided there is cash available to pay him. Under no circumstance will the United States or the Court be obligated to pay or reimburse any Fees or Expenses of the Receiver even if there are insufficient funds in the Receivership Estate to fund such payments or reimbursements.

8.      Prior to applying to the Court for reimbursement of Expenses, the Receiver shall submit to the United States his invoices for Expenses and appropriate supporting documentation in reasonable particularity ("Expense Summary"), together with a status report of the Receiver's activities and actions during the applicable time period. Within thirty (30) days of submission to the United States, the United States shall either approve, reject, or inquire regarding the Expense Summary. Should the United States inquire regarding the Expense Summary, the Receiver shall make good faith efforts to resolve any issues within thirty (30) days of the inquiry.  Upon the United States' final action regarding a particular Expense Summary, the Receiver shall promptly submit the Expenses Summary to this Court on such notice as the Court may direct, indicating whether the United States approved or rejected the Expenses. If the United States rejected some and/or all of the Expenses, the United States may, but is not required to, make a separate submission explaining the basis of its rejection. If either the United States or any other person objects to some and/or all of the Expenses, this Court must approve such disputed Expenses, after such hearing as the Court may direct, before the Receiver pays the amount requested. If the United States has approved the Expenses, and no other person files an objection to such Expenses

Summary with the Court within thirty (30) days of notice thereof, the Receiver is authorized to reimburse and/or pay the Expenses without further order of the Court.

9.      The funds necessary to pay and satisfy the Entities' obligations, including payment of the Receiver's Fees and Expenses, shall be paid: (a) from the Distribution Fund; and/or (b) in accordance with the Receiver's Plan or such other distribution plan as may be approved by this Court.

10.      For a period of sixty (60) days from the date of this Order, subject to an extension by this Court, all persons who receive actual notice of this Order are hereby stayed (the "Stay") and prohibited from directly or indirectly:

      a.      Commencing or continuing any civil judicial, administrative, or other action or proceeding of any kind against the Entities;

      b.      Creating, perfecting or enforcing any lien, claim, encumbrance or interest in, upon or to any of the Entities' Assets;

      c.      Obtaining possession or control over any of the Entities' Assets, whether by foreclosure or otherwise; and

      d.      Using self-help, set-off or executing or issuing any attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, invading or disturbing any of the Entities' Assets.

Provided that, this Paragraph shall not apply to the United States.

11.      On request of a party in interest, and expedited notice and hearing, the Court may grant relief from the Stay imposed by paragraph 10 of this Order for good cause shown.

12.      This Order shall not affect, impair, or modify any person's rights or remedies under applicable law, contract or otherwise, except as specifically set forth herein.

13.      The Receiver may be removed at any time by the Court, or upon the request of the United States for cause, as approved by the Court, and a successor shall be named by the Court, after notice to the United States, Cabelka, and Jacqueline Kay Latimer ("Latimer"). In the event that the Receiver resigns from office, the Receiver shall first provide written notice to the United

States, and such resignation shall not be effective until the Court appoints a successor under such conditions as the Court may order.

14.    The Receiver, together with any Professionals retained by the Receiver pursuant to this Order, shall be entitled to rely on all outstanding rules of law and court orders and shall not be liable to anyone for his or their own good faith compliance with any order, rule, law, judgment, or decree, including those issued or enacted in foreign jurisdictions.

15.    Except for any potential liability to the United States under 31 U.S.C. § 3713, the Receiver shall not be liable to any other persons for his good faith compliance with the duties and responsibilities as Receiver (even to the extent that the Receiver shall be negligent in carrying out such good faith compliance). Nor shall the Receiver be liable to anyone for any actions taken or omitted by him except on a finding by this Court that he acted or failed to act as the result of misfeasance or bad faith. The Receiver shall have no personal liability for any charge, fine, or citation arising out of or related to the operation by the Receiver of the businesses of the Entities, including, but not limited to, any alleged violations asserted by any state governmental entity.

16.    This Court shall have exclusive jurisdiction over: (a) any claims made by any person against the Receiver for any actions or omission related to the Entities or the Entities' Assets; and (b) any claims made by any person against any Professional with respect to that Professionals' execution of their respective duties as directed by the Receiver.

17.    The Receivership Estate shall indemnify and hold harmless the Receiver with respect to any or all claims, rights and causes of actions of every type or nature whatsoever relating or referring in any manner to the Entities or the Entities' Assets ("Indemnity Claims") unless this Court finds the Receiver breached any duty as specified herein. The Receivership Estate shall further indemnify the Receiver for, and advance, reasonable costs and attorneys' fees in defending

against, any Indemnity Claims; *provided, however,* to the extent that this Court finds that the Receiver breached any duty as specified herein, the Receiver shall immediately repay any advanced defense costs or attorneys' fees.

18.     To the extent the Receiver pays Indemnity Claims and/or fees, costs or expenses in connection therewith, he shall be entitled to recover all such amounts paid from the Distribution Fund on a super priority basis with the right of distribution senior and prior to the claims or interests of creditors (including investors) of the Entities.

19.      The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary duties and obligations in this matter unless and until this Court so orders after due notice and hearing.

20.     Except as expressly stated herein, nothing in this Order shall be construed to impair, limit, or constrain the Receiver's powers under any Federal Rule of Civil Procedure, any statute of the United States, or any decisional authority construing the powers of or procedural mechanisms available to federal equity receivers.

21.     The United States Marshal or any other law enforcement or peace officer with notice of this Order is hereby authorized to accompany the Receiver to any location designated by Receiver where the Receiver believes assets or documents of the Entities may be located, without the necessity of a writ of execution having been issued, and is hereby directed, authorized and ordered to prevent any person(s) from interfering with the Receiver (or any person under the direction of the Receiver) from carrying out his duties under this Order or interfering with any property in control of the Receiver, or any property subject to this Order.

22.     The Receiver is hereby authorized to take all action necessary to gain access to all

real property, leased premises, storage facilities, bank accounts, and safe deposit boxes wherein any personal property of the Entities may be situated.  All banks and financial institutions wherein the Entities' accounts are located are hereby ordered to surrender the Entities' accounts to the Receiver, and to pay him the funds within each of these accounts, within thirty (30) days of their receipt of a copy of this Order.

23.    All persons with notice of this Order shall not interfere with any property in control of the Receiver and shall not interfere with the Receiver in the effectuation of his duties under this Order.

24.    The Receiver is authorized but not required to (a) disable any property belonging to the Entities or to place the property into storage (b) insure any property taken into his possession (c) hire any person, firm or company to change the locks to any premises belonging to the Entities so as to exclude any person from interfering with Receiver's custody of the premises (d) hire any person, firm or company to move any property belonging to the Entities or aid the Receiver in taking possession, custody and control of the Entities' property.

25.    Within thirty (30) days of the entry of this Order, Cabelka and Latimer shall separately make a full and complete disclosure to the Receiver of all assets in which Cabelka has an interest, directly or indirectly, regardless of record title, and shall not, directly or indirectly, interfere with or impede the Receiver in his performance of his duties under this Order.

26.    Within thirty (30) days of the entry of this Order, Cabelka, Latimer, and any other person serving as a manager, director, and/or officer of any of the Entities, shall immediately resign any offices that they hold with any of the Entities.

27.    Within thirty (30) days of the entry of this Order, Cabelka and Latimer shall deliver to the Receiver all checks, cash, securities (stocks and bonds), promissory notes, documents of title, contracts, keys, passwords, bank records, and other property in which Cabelka has an interest,

directly or indirectly, including, but not limited to, property in the name of Cabelka, Latimer, and/or the Entities, and/or their successors, nominees, and transferees.   Cabelka and Latimer shall immediately deliver to the Receiver any checks, cash, securities (stocks and bonds), promissory notes, documents of title, contracts, vehicles, and other property in which Cabelka has an interest, and that is received after the entry of this Order, provided, however, that Cabelka shall be allowed to retain and use $3,000.00 per month for his living expenses for 90 days (or a total of $9,000.00), as long as he is cooperating with the Receiver and there are funds available in the Receivership Estate.   Cabelka, Latimer, and their agents, employees, accountants, attorneys, and representatives are hereby ordered to cooperate with the Receiver and provide requested information to him to allow him to carry out his duties under this Order.  In addition, within thirty (30) days of the entry of this Order, Cabelka and Latimer shall disclose to the Receiver all transfers, sales, and assignments of Cabelka's property and/or his interests in property regardless of record title made within four (4) years prior to the entry of this Order.

28.    The Court retains jurisdiction with respect to any matters addressed in this Order, including, without limitation, any and all matters relating to or affecting the Receivership Estate, Cabelka's Assets, the Entities' Assets, the Receiver, lawsuits pertaining to the Receivership Estate, and the scope of authority granted the Receiver hereunder.

29.   Defendant Cabelka, Defendant Latimer, and their family members, associates, agents, employees, and all other persons acting in concert with them or any of them, or on their behalf, or residing thereon, and all other persons acting in concert with, or on their behalf, are immediately hereby restrained and enjoined from damaging, vandalizing, removing any personal property, fixture, or structure, and/or interfering in any way with the Megargel Property, mortgaging or causing liens to be filed against the Megargel Property, interfering with the Receiver, interfering

11

with the Receiver's efforts to comply with his obligations under this Order, and/or interfering with any prospective purchaser or his or her realtor or agent, and Defendant Cabelka and Defendant Latimer, and their family members, associates, agents, employees, and all other persons acting in concert with them or any of them, or on their behalf, or residing thereon, are hereby enjoined and restrained from entering onto the Megargel Property on the 30th day after the entry of this Order, and permanently thereafter.

30.    To the extent they have not already done so, Defendant Cabelka and Defendant Latimer; and their family members, associates, agents, employees, and all other persons acting in concert with, or on their behalf, or residing thereon, shall, no later than the 30th day after the entry of this Order, vacate and depart from the Megargel Property, they shall remove only their exempt personal property located upon the Megargel Property, or it will be considered abandoned and may be disposed of by the Receiver, and they shall cooperate with the Receiver and with his marketing and the sale of the Megargel Property.   In addition, within thirty (30) days of the entry of this Order, Cabelka and Latimer shall disclose to the Receiver the identity of anyone who removed from the Megargel Property any personal property valued at over $1,000 at any time, and provide to the Receiver a detailed list and description of those removed items.

31.    All persons or businesses occupying the Megargel Property in any manner, if any, will leave and vacate the Megargel Property permanently no later than thirty (30) days after the entry of this Order, each taking his or her personal property (but leaving all personal property belonging to Cabelka and/or in which he has or had an interest, and all improvements, buildings, structures, fixtures, and appurtenances to the Megargel Property).  If any person fails or refuses to vacate the Megargel Property by the date specified in this Order, then the Receiver is authorized to coordinate with the United States Marshals Service to take all actions that are reasonably

necessary to have those persons ejected.  The United States Marshals Service is authorized and directed to take any and all necessary actions, including, but not limited to, the use of reasonable force, to enter and remain on the premises of the Megargel Property, which includes, but is not limited to, the land, the buildings, vehicles, and any structures located thereon, for the purpose of executing this Order.  The United States Marshals Service is further authorized and directed to arrest and/or evict from the premises of the Megargel Property, any and all persons thereon who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way with the execution of this Order, including any supplemental or amended Order.   If any person fails or refuses to remove his or her personal property (other than property in which Cabelka or the Entities have an interest) from the Megargel Property by the time specified herein, the personal property remaining on the Megargel Property thereafter is deemed forfeited and abandoned, and the Receiver is authorized to remove it and to dispose of it in any manner he sees fit, including to sell such property, in which case the proceeds of the sale are to be applied to the tax liability of Defendant Cabelka reduced to judgment in *United States vs. Cabelka;* Case No. 7:16-cv-00126-O-BP, U.S. District Court, Northern District of Texas.

32.    When the United States Marshal concludes that Defendant Cabelka and Defendant Latimer, and their family members, associates, agents, employees, and all unauthorized persons have vacated, or been evicted from, the Megargel Property, then he shall relinquish possession and custody of the Megargel Property, and any personal property found thereon, to the Receiver, to be sold and the net sales proceeds applied to Defendant Cabelka's federal income tax debt reduced to judgment in *United States vs. Cabelka;* Case No. 7:16-cv-00126-O-BP, in this Court.

33.    Should Cabelka, Latimer, and/or their family members, associates, agents, employees, and all other persons acting in concert with, or on their behalf, or residing thereon,

either timely fail to vacate and depart from the Megargel Property or attempt to enter onto the Megargel Property, more than 30 days after the entry of this Order, or violate any provision of this Order, then that person or persons may be found in contempt of this Court.

34.    The United States shall provide notice of the entry of this Order to Cabelka by the ECF-System and by U.S. mail and email; and to Latimer by the ECF-System, U.S. mail, and email, and to Benjamin Tech, her counsel of record in *United States vs. Cabelka;* Case No. 7:16-cv-00126-O-BP, by the ECF-System, U.S. mail, and email.

SO ORDERED on _____, 2021.


_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

VOL 0607 PAGE 946    101827

CASH DEED

DATE:    March 27, 2001

GRANTOR:    Kelly E. Schmaltz and wife, Toni L. Schmaltz

GRANTOR'S MAILING ADDRESS:    P.O. Box 303
Megargel, TX 76370

GRANTEE:    G. D. Larson

GRANTEE'S MAILING ADDRESS:    P.O. Box 295
Megargel, Tx 76370

Consideration:    Ten and No/100 Dollars and other good and valuable consideration, the receipt
and sufficiency of which is hereby acknowledged.

PROPERTY (including any improvements):

Survey and description of a 4.40 acre parcel, more or less, out of the East 124.3
acres of Block 1, G.P. Meade's "LM" Pasture Subdivision of The William E.
Probert Survey, Abstract 337, North of Megargel in Archer County, Texas as
follows:

BEGINNING at a 1/2" iron rod set at the West edge of an old cedar fence post
in the East right-of-way of 80 foot F.M. Highway 210; Whence the fenced
Southeast corner of Block 10 did bear 1108.9 feet S 89 degrees 23' E GRID
NAD83 in 1979; said iron rod is in the occupied North line of Block 1;

THENCE S 52 degrees 29' E 344.5 feet to a 1/2" iron rod set for the East corner
of this parcel;

THENCE S 37 degrees 49' W GRID NAD83 498.8 feet to a steel "T" post
found for the South corner of this parcel;

THENCE S 52 degrees 29' W GRID NAD83, at 344.5 feet pass a 1/2" iron rod
set in the highway fence, in all 384.5 feet to a point in the centerline of 80 foot
F.M. 210 for the West corner of this parcel;

THENCE N 37 degrees 45' E GRID NAD83, with said centerline and the West
line of said 124.3 acre tract, at 468.5 feet cross the north line of Block 1, in all
498.8 feet to a point for the North corner of this parcel;

THENCE S 52 degrees 29' E GRID NAD83 40.0 feet TO THE PLACE OF
BEGINNING;

Containing 4.40 acres, more or less, of which the Northwest 40 feet or 0.46 of an
acre lies on 80 foot F.M. Highway 210, which was taken by condemnation 8
February 1929, recorded in Archer County Commissioners Court minutes,
Volume O, Page 295.

Reservations from and Exceptions to Conveyance and Warranty:

This conveyance is subject to all restrictive covenants, easements, and rights-of-
way and all outstanding mineral reservations and interests of record, if any.

> **Government
> Exhibit**
> ___
> 7

CERTIFIED TO BE A TRUE AND
CORRECT COPY
KARREN WINTER, COUNTY CLERK
ARCHER COUNTY
PAGE 1 OF 2

APP 148

VOL 0607 PAGE 947

Reservations from and Exceptions to Conveyance and Warranty:

This conveyance is subject to all restrictive covenants, easements, and rights-of-way and all outstanding mineral reservations and interests of record, if any.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee's heirs, executors, administrators, successors, to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservation from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

*Kelly E. Schmaltz*
Kelly E. Schmaltz

*Toni L. Schmaltz*
Toni L. Schmaltz

STATE OF TEXAS                    )
COUNTY OF ~~ARCHER~~ Wichita      )

This instrument was acknowledged before me on the 37 day of
July _____, by

*Angie Parker*
Notary Public, State of Texas

ANGIE PARKER
Notary Public, State of Texas
My Commission Expires 9-10-2002

---

**THE STATE OF TEXAS**
*County of Archer*

I, Jane Ham, Clerk County Court in and for said county do hereby certify that the foregoing instrument was filed for record in my office the 10th day of August 2001, at 9:05 O'clock A M., and duly recorded on that date, in Official Public Records of said county, Volume 607 on page 946.
WITNESS my hand and seal of County Court at my office in Archer City, Texas the day and year last above written.

By *Teri Rutledge* _____, Deputy

Jane Ham, Clerk County Court
Archer County, Texas

CERTIFIED TO BE A TRUE AND
CORRECT COPY
KARREN WINTER, COUNTY CLERK
ARCHER COUNTY

PAGE 2 OF 2

STATE OF TEXAS
COUNTY OF ARCHER
I, KARREN WINTER, COUNTY CLERK, DO
HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY AS SAME APPEARS OF RECORD
IN MY CUSTODY.
Witness my hand and seal of office on 4-8-19
KARREN WINTER, COUNTY CLERK
ARCHER COUNTY, TEXAS
BY _____ Deputy

APP 149